Timothy A. BROWN, Plaintiff–Appellee,

v.

Robert J. LOWEN, F. Elwood Kyser, and International Organization of Masters, Mates, and Pilots, Defendants–Appellants.

No. 88–2876.

United States Court of Appeals, Fourth Circuit.

Argued July 28, 1988.

Decided Sept. 14, 1988.

W. Michel Pierson, Baltimore, Md., for defendants-appellants.

Paul Alan Levy (Arthur L. Fox, II, Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., on brief), for plaintiff-appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This appeal is from an order of the district court issuing a preliminary injunction in favor of the plaintiff, Timothy Brown. Plaintiff is a candidate for president of the International Organization of Masters, Mates and Pilots (IOMPP) of which defendant, Robert Lowen, is the current president. The district court has ordered IOMPP to provide plaintiff with mailing labels containing the names and addresses of voting members of the union. Though the order of the district judge related to an application for a preliminary injunction, the granting of the motion in effect constituted a decision on the merits. Accordingly, we have reviewed this case on the merits. Doing so, we affirm the decision of the district court as one on the merits.

IOMPP is a labor organization comprised of workers in the maritime industry. The union conducts quadrennial elections of its officers. Nominations of candidates for these offices are made at the union's convention. Any eligible member of the union may be nominated. To be eligible a person need be a union member in good standing. A member may even nominate himself. Ballots containing the names of those nominated are then mailed to members of the union not sooner than ten days nor later

than thirty days after the end of the convention. The union then allows ninety days from the mailing of the ballots until they must be returned.

The crux of this dispute arises from plaintiff's desire to distribute campaign literature, at his own expense, to the union's membership before the nominating convention. Only through the union can plaintiff obtain a complete list of the union membership with their addresses. However, the procedures used by the union provide that "[t]he right to distribution of literature only commences after the nomination procedure is complete."

█ The Labor–Management Reporting and Disclosure Act of 1959 at 29 U.S.C. § 481(c), however, provides in pertinent part that unions and their officers "shall be under a duty, enforceable at the suit of any bona fide candidate for office ... to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization...." It is on this provision of the Act that the plaintiff relies for his right to have his campaign material mailed to union members within thirty days before the quadrennial meeting of the union.

The Act seems plain on its face: If the request to distribute by one qualified to be a candidate for union office, even though he is yet to be nominated is "reasonable" the union is required to "comply with all [such] reasonable requests." This language conditions the right of the contesting union office seeker to have his campaign material distributed only on the reasonableness of his request. If his request is reasonable, the language of the statute granting the request is mandatory. Whether the request is reasonable is a matter to be determined consistent "with the Act's command to unions to conduct 'free and democratic' union elections." *Steelworkers v. Usery,* 429 U.S. 305, 309, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977). Accordingly, if it can be said that the candidate's request is reasonable the statute upholds the right of the candidate to have his

request granted. Such conclusion is nothing more than a reading of the plain language of the statute and, as we said recently in *United States v. Morison,* 844 F.2d 1057, 1064 (4th Cir.1988), when the terms of "a statute are unambiguous on their face, or in light of ordinary principles of statutory interpretation, then judicial inquiry is complete (citations omitted)." We find that whether the plaintiff is entitled to have his request granted depends entirely on whether his request may be said to be reasonable.

Our reading of the statute accords with the administrative construction of the statute's mandate as declared by the Secretary of Labor, to whom the enforcement of the statute is entrusted. The Department of Labor has repeatedly declared that the statutory command is to be observed if it is reasonable. It has stated categorically that, under its construction of the statute, the critical issue is not whether the union's rules or by-laws are reasonable (as the union argues) but whether the request of the plaintiff is reasonable, primarily in its timing. Indeed, in a letter to the union regarding this specific request of the plaintiff, the Director of the Office of Elections, Trusteeships and International Union Audits of the Department of Labor, advised that

A self-professed candidate is entitled to make campaign literature mailings at his own expense and may ask the union to have them sent within a reasonable period of time prior to the election. In the present situation, a request for a mailing to be made approximately one month prior to nominations would appear to be reasonable. Failure or refusal by the union to honor a legitimate mailing request is a continuing violation of Title IV which might, under certain circumstances, affect the outcome of the election.

While this opinion of the Department is not binding, it is an opinion entitled to consideration by this Court and is not to be lightly disregarded.

Moreover, this opinion of the Department seems to be in clear accord with Congress' intent of "insur[ing] union democracy" in

its enactment of 29 U.S.C. § 481. Professor Clyde Summers who authored a "Bill of Rights for Union Members" which formed the basis of the statute in question, has stated that "[t]he declared and unquestioned purpose of Congress was to ensure fair and democratic elections. Congress recognized that one of the major obstacles to meaningful elections was the inherent advantage of incumbents and it sought to curb the advantage." Summers, *Democracy In A One–Party State: Perspectives From Landrum–Griffin*, 43 Md.L.Rev. 93, 117–118 (1984). When the union bureaucracy has exclusive control of the union membership lists, with addresses, as in this case, and that bureaucracy has continuous contact with the union membership and particularly the local union officers, the advantages of incumbency over any attempt of an insurgent to promote his candidacy before or after the quadrennial nominating convention of the union are obvious. By requiring unions to comply with all reasonable requests of candidates for access to the union lists these advantages of incumbency are reasonably moderated. And it was to provide that very moderation of the advantages of incumbency which was the intention of the Act.

■ There does not seem to be any contention that the request of the plaintiff herein is unreasonable. Nor do we understand the union to argue that plaintiff's request is unreasonable. Its position is that the union by-laws provide that "[t]he right to distribution of [campaign] literature only commences after the nomination procedure is complete." Whether intended or not, the manifest result of this is to delay the insurgent candidate in beginning his campaign and to reduce the time within which he can make his appeal to the voters. The incumbents, however, have had four years in which they have enjoyed the exclusive right to the voter lists and addresses and to cultivate their relations with the local union officers who would be expected to have the greatest influence with the rank and file. During all this time, too, the incumbents had had control over the union press and its newsletter to the members. The advantages of the union by-law to the incumbent cannot be questioned. However, the union justifies its by-law as a reasonable method of satisfying the Act's prohibition against "discrimination in favor of or against any candidate with respect to the use of lists of members...." Beyond that, it takes the position that the relevant reasonableness standard is not the one to be applied in determining the reasonableness of the insurgent's request, but is the one to be applied in determining the reasonableness of the union's restraint on the right to have his "reasonable request" granted. We are not persuaded by the union's reasoning.

In the first place, we find nothing discriminatory in granting the plaintiff's request made within thirty days of the quadrennial convention, since any candidate, whether an incumbent or an insurgent, has the same rights as the plaintiff. Granting the plaintiff's request is simply an attempt at a partial redress of the advantage the incumbent has; it is not an attempt at hobbling or gaining any advantage over any other candidate. The union has identified no way in which granting the plaintiff's request will operate as a discrimination against any other possible candidate for union office. Actually, the granting of the request simply reduces the discrimination of exclusive control by the union incumbents over the electoral lists. There is no conceivable way in which the granting of plaintiff's request will work a discrimination against any other union member.

Neither do we agree with the union that the question posed by this controversy is the reasonableness of the union's by-law. The criterion for resolving this controversy is the reasonableness of the plaintiff's request. Of course, in assessing the reasonableness of the request it is entirely proper to consider whether granting the request would work a discrimination against other candidates. But that question is to be considered as a part of the question whether the plaintiff's request was reasonable. So far as we are able to understand, the union does not urge in objection to plaintiff's claim that the granting of his request will result in any discrimination. And well they

could not, since any other candidate could exercise exactly the same right as that requested by the plaintiff.

█ It follows that we find no basis in this record for excusing the union from conforming with the plain command of the statute. It certainly stands the statute on its head to do as the union argues by making the issue the reasonableness of the union by-law rather than, as the statute declares, making the issue the reasonableness of the plaintiff's request. The command of the statute may not legitimately be subordinated to the somewhat ambiguous language of a union by-law. Such a rule would render union by-laws superior to the congressional mandate and would provide dissident unions with a ready means for nullifying the statute's command. We are not disposed to uphold such a misconception of congressional power in this field. We think the district court ruled correctly in granting relief to the plaintiff.

We are aware that our judgment is contrary to that of the Third Circuit as expressed in *Donovan v. Metropolitan District Council of Carpenters,* 797 F.2d 140 (3d Cir.1986). In that case, the Third Circuit upheld the union's decision not to release mailing labels prior to a certain date because "[t]he union's rule here was a reasonable one." *Ibid.* at 144. As we have previously stated, we believe the test to be not whether the union's rule was reasonable but whether the candidate's request was reasonable. For this reason, we respectfully disagree with the judgment of the Third Circuit.

Accordingly, the judgment of the district court is

AFFIRMED.

K.K. HALL, Circuit Judge, dissenting:

I cannot agree with the majority that IOMPP has failed to comply with its duty to honor a reasonable request by a candidate for union office. In my view, a request for mailing that conflicts with the established internal procedures of a union is *per se* unreasonable unless the union's procedures are shown to be unfair or discriminatory. By affirming the district court's contrary conclusion, the majority has today adopted an unduly restrictive interpretation of the Labor Management Reporting and Disclosure Act ("LMRDA" or "the Act") that is inconsistent with the statutory purpose and in clear conflict with the decisions of two of our sister circuits.

As the majority correctly recognizes, the Act implements Congress' clearly expressed desire to promote "union democracy." I further agree that, as a corollary to that goal, the statute prohibits undue electoral discrimination in favor of incumbents. Democracy, however, is not a standardless expression of majority rule but, rather, a system of ordered liberty in which the will of the electorate is determined through fair and equitable procedures. In this case there has been no finding or even persuasive suggestion that IOMPP's election procedures limiting candidate mailings until after the formal nomination process is unfair, discriminatory, or provides any undue advantage to incumbents. The majority, as did the district court, has concluded, however, that the fairness of the union's rules is irrelevant and that the reasonableness of a would-be candidate's request is to be assessed solely by examining the request itself.[1] In my view that approach is not only simplistic but also threatens the broader goals of the Act.

In the first instance, the reasonableness of any action requires consideration of the underlying factual context. A request to light a candle in a darkened room may seem eminently reasonable if examined in isolation but when the same request is made in a room filled with gas fumes, the reasonableness is substantially diminished. While appellee Brown's request that the union mail his campaign literature without regard to its established procedure may have carried less explosive potential, the

---

1. Contrary to the majority's suggestion, the union has sought to argue that appellee's request for mailing was unreasonable. The union simply bases its argument, in a broader context, than the majority is willing to consider.

**220**

request was nonetheless a clear threat to the union's ability to organize its own internal affairs.

The Supreme Court has recognized that the LMRDA was not intended to "undermine union self-government." *United Steelworkers of America v. Sadlowski*, 457 U.S. 102, 117, 102 S.Ct. 2339, 2348, 72 L.Ed. 2d 707 (1982). Moreover, the Court noted that although incumbency carries certain undoubted natural advantages, it should not be overstated. *Id.* at 114, 102 S.Ct. at 2347. Logically, the Act does not sanction judicial intrusion into union internal matters unless the union has unfairly distorted the normal democratic process to favor incumbents. I can see no indication that IOMPP's rules which appellee seeks to avoid would accomplish that end.

Both the Third Circuit in *Donovan v. Metropolitan District Council of Carpenters*, 797 F.2d 140 (3d Cir.1986), and the Ninth Circuit in *Marshall v. Provision House Workers Union, Local 274, Amalgamated Meat Cutters and Butcher Workers*, 623 F.2d 1322 (9th Cir.1980), have concluded that a candidate's compliance with reasonable nondiscriminatory union procedures is relevant to whether a mailing request is itself reasonable. I would agree completely with the *Donovan* court that fair uniform rules which avoid even the "appearance of disparate treatment" and minimize the likelihood of "needless judicial second guessing," *Donovan*, 797 F.2d at 144, are not to be treated lightly in judicial proceedings.

In contrast to the salutary doctrine developed in the Third and Ninth Circuits, the majority has concluded that unions are without power to structure their own electoral process even when that process serves the Act's broader purposes of promoting union democracy. I cannot accept that section 481(c) of the statute requires

such an irrational result.[2] Accordingly, I would reverse the district court and, therefore, I respectfully dissent from the majority's decision.

---

**2.** I find little significance in the fact that the Secretary of Labor has taken a position in this case similar to that articulated by the majority. While the views of the administrative agency to which statutory enforcement is entrusted are entitled to some deference, we need not accept those views blindly. In this instance, the Secretary's position is not only contrary to reasonable statutory interpretation, it is also arguably in conflict with his own regulations. At 29 C.F.R. § 452.67, the Department of Labor clearly envisions that distribution of campaign literature may be subject to rules governing the methods of distribution and requires the union to inform all candidates of the nature of those conditions. The Secretary's instant position renders any such distribution rules superfluous.